UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
DEC 11 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 07-118 (RBW) |
| | : | |
| v. | : | |
| | : | |
| MARVELL DEMETRIC MAYS | : | |
| | : | (Under Seal) |
| Defendant. | : | |

## GOVERNMENT'S SUPPLEMENT TO PROFFER OF PROOF IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America submits the following supplement to proffer of proof in support of defendant's plea of guilty.

The facts contained herein are not complete in all details. Instead they are provided in order to demonstrate that the elements of the charged offense have been met for purposes of a plea in this case. These are not all of the facts known to the defendant, Marvell Demetric Mays (hereinafter "Mays"), and to the Government.

In late 2005, Mays met a cooperating informant/defendant (hereinafter "CI") through a relative. The CI had connections to a group of Guatemalan nationals who were trafficking in kilogram quantities of cocaine. The CI explained to Mays that he had such connections. The CI sold Mays at least two kilograms of cocaine over a month's time. These sales took place in suburban Maryland at different locations. Further, Mays paid $21,000 for each kilogram of cocaine. After these early contacts, the CI was arrested and began to work for the United States as a cooperating defendant.

1

Then, in March 2006, the CI and Mays met in Prince George's County, Maryland. During this meeting, Mays provided the CI with $10,000 in exchange for a kilogram of cocaine. The CI returned the $10,000 to Mays and explained to Mays that kilogram quantities of cocaine sold for $21,000 each. Mays then told the CI that he could sell the CI a Smith and Wesson 9mm pistol, however, the CI did not buy the pistol.

During each of the telephone conversations both Mays and the CI spoke in thinly veiled codes so as to avoid being detected by law enforcement.

During 2006, Mays telephoned the CI several times to request quantities of cocaine, however, the CI did not have any cocaine and could not supply Mays with any additional amounts. The ATF was monitoring these phone calls, and was attempting to set up a law enforcement method known as a reversal, but twice Mays was so late for the arranged reversals that agents aborted the operation and no reversal took place. In at least one of these telephone conversations, Mays asked the CI if he knew any other cocaine suppliers who might be willing to supply Mays with cocaine. In September 2006, Mays took the CI to his condominium located at 1501 27th Street, SE, Washington, DC. Mays explained to the CI that the CI could use Mays' condominium to cook cocaine.

Between late 2006 and April 2007, Mays called the CI several times to request kilogram quantities of cocaine. However, on each occasion the CI said that he did not have access to cocaine.

In April 2007, however, the CI agreed to sell a kilogram of cocaine to Mays in exchange for $21,000 in U.S. currency. The Immigration and Customs Enforcement (hereinafter "ICE") made up a 1-2% formula of cocaine (hereinafter "sham") and placed it in kilogram wrappings. Mays and the CI agreed to meet in a parking lot in the vicinity of Howard University in Northwest Washington, D.C., on April 19, 2007 so that Mays could purchase a kilogram of cocaine from the CI for $21,000.

Special Agents from the Bureau Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") arrived to monitor the meeting and to arrest Mays if he tried to buy the kilogram. Wearing a monitoring and recording device, the CI was searched and given the sham in a black computer case. Mays arrived in a car with dealer tags. He got in the CI's car and began counting the money he had brought after explaining that he needed to do so. The CI handed the case containing the sham to Mays who looked at it and exclaimed, "My man! You came through for me!" ~~Mays accepted the case containing the sham and placed it between his legs on the passenger side floorboard of the CI's car~~. CI placed the sham on the center console of the car. Soon Mays realized that he had not brought all of his money in the CI's car and he stepped out of the CI's car to go back to his own car to collect the rest of the cash. After returning to the CI's car, members of ATF moved in and placed Mays under arrest. They recovered the sham from the passenger floorboard where Mays had been sitting and approximately $16,000 in U.S. currency from Mays.

Pursuant to court-authorized search warrants, Mays' condominium at 1501 27th Street, SE, Washington, DC, was searched and agents recovered a digital scale, cutting agents, marijuana, a quantity of cocaine and a quantity of crack cocaine, and a pistol.

Therefore, Mays attempted to possess with intent to distribute and to distribute three kilograms of cocaine for resale.

_____
MARVELL DEMETRIC MAYS
DEFENDANT

_____
JAMES RUDASILL
COUNSEL FOR MR. MAYS

_____
S. ELISA POTEAT
ASSISTANT U.S. ATTORNEY

**Elements of the Offenses**.

**Count I.**

**A. Elements**

The essential elements of the offense of attempt to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 United States Code, § 846, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that the defendant intended to commit the crime of possession with intent to distribute 500 grams or more of cocaine;

(2) that the defendant did an act reasonably adapted to accomplishing the crime of possession with intent to distribute 500 grams or more of cocaine.[1]

---

[1] The essential elements of possession with intent to distribute cocaine in an amount of 500 grams or more are: a) that the defendant possessed a controlled substance; b) that the defendant did so knowingly and intentionally; and, c) that when the defendant possessed the controlled substance, he had the specific intent to distribute the controlled substance. Cocaine is a controlled substance.

(3) that the defendant did more than prepare to commit te crime of possession with intent to distribute 500 grams or more of cocaine, he came dangerously close to completing the crime.

Count One of the Indictment charges that your client conspired to possess with intent to distribute and to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Sections 846. Thus, in order to make the defendant liable for the sentencing enhancements set out in 21 United States Code, § 846(b)(1)(B)(i), the United States would be required to prove beyond a reasonable doubt that the defendant possess with intent to distribute and to distribute 500 grams or more of cocaine, as charged in the Indictment. *Apprendi v. New Jersey,* 530 U.S. 466 (2000). Your client further understands that as set out in paragraph 2 of the plea agreement between the United States and your client, your client is accepting responsibility for at least two kilograms but less than 3.5 kilograms of cocaine. This drug quantity will be utilized in determining his sentence pursuant to the Federal Sentencing Guidelines.

**B. Penalties**

The penalty for possess with intent to distribute and to distribute 500 grams or more of cocaine in violation of 21 U.S.Code, § 846 is set out at 21 U.S. Code, § 841(b)(1)(B)(I), (ii), and (iii). The maximum penalty, therefore, is:

(A) a term of imprisonment which may not be less than five years nor more than life[2];

(B) a fine not to exceed $2,000,000;

(C) a term of supervised release of at least 4 years after any period of incarceration

(D) a special assessment of $100.

---

[2] Because your client has sustained a prior felony conviction involving the distribution of drugs, the possible minimum penalty is therefore possibly higher, bringing his minimum sentence to 10 years.

(modified to include the District of Columbia).

                                            Respectfully submitted,

                                            JEFFREY A. TAYLOR
                                            UNITED STATES ATTORNEY

BY: _____
                                            S. ELISA POTEAT
                                            Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20001
                                            (202) 514-7067
                                            Bar No. 420-604